IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERNIE HERNANDEZ,

    Petitioner,

v.

JOSE NUNEZ, Warden,[1]

    Respondent.

Case No. 3:25-cv-01380-HZ

**OPINION AND ORDER**

**HERNÁNDEZ, District Judge**

Petitioner, an adult in custody at the FCI Sheridan Satellite Camp ("FCI Sheridan"), brings this 28 U.S.C. § 2241 habeas corpus action challenging the Bureau of Prisons ("BOP") calculation of his earned time credits under the First Step Act ("FSA"). Petitioner contends the BOP improperly failed to award him FSA time credit for the period between his initial self-surrender date into BOP custody at the Metropolitan Correctional Center in San Diego ("MCC San Diego") and his arrival at his designated institution, FCI Sheridan.

BACKGROUND

Petitioner was convicted in the Southern District of California for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and on June 7, 2023, was sentenced to 30 months of imprisonment followed by four years of supervised release. *United States v. Hernandez*, Case No. 3:20-cr-00519-MMA (S.D. Cal.); Declaration of George Cho, ECF No. 9 ("Cho Decl."), ¶ 4, Exh. A. Petitioner self-surrendered to MCC San Diego on September 25, 2024, and arrived at his designated BOP institution, FCI Sheridan, on May 15,

---

[1] Actin Warden Jose Nunez now has custody over Petitioner and is the proper Respondent in this case. *See* 28 U.S.C. § 2242; *see also* Fed. R. Civ. P. 25(d).

1 - OPINION AND ORDER

2025. Cho Decl., ¶ 2. Petitioner's current projected release date via FSA time credits is September 11, 2026, with an earlier home detention eligibility date of June 13, 2026. Cho Decl., ¶ 4.

Petitioner alleges that during the time between his self-surrender and arrival at FCI Sheridan, he was transferred between several holding and transit centers, and that during this period he remained fully in BOP custody and was engaged in productive activities, including employment in kitchen and commissary departments. He contends that the BOP incorrectly refuses to apply FSA credits earned during the transfer period from September 25, 2024, and May 15, 2025. Respondent argues the habeas petition should be dismissed for failure to exhaust available administrative remedies and because Petitioner has not demonstrated any constitutional violation.

## DISCUSSION

### I.    Exhaustion of Administrative Remedies

Petitioner concedes he did not exhaust his available administrative remedies prior to filing his habeas petition, but argues that exhaustion should be excused as futile. The Court agrees. Generally, "[i]n order to seek habeas relief under section 2241 . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." *Singh v. Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011). Exhaustion is not, however, a jurisdictional requirement under § 2241. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). If the pursuit of administrative remedies "would be a futile gesture," courts have discretion to waive the exhaustion requirement. *Laing v. Ashcroft*, 340 F.3d 994, 1000 (9th Cir. 2004).

Here, Petitioner alleges that a BOP regulation, 28 C.F.R. § 523.42, conflicts with Congress's mandate to the BOP established in the FSA. Because the BOP's alleged

miscalculation of his credits stems from an application of its own regulation, requiring him to pursue administrative remedies is unlikely to yield a different result, rendering it futile. Accordingly, a waiver of exhaustion is appropriate in this case. *See Cano v. Birkholtz*, 2025 WL 1808983, at *1 (D. Or. July 1, 2025) (finding exhaustion would be futile in case challenging application of 28 C.F.R. § 523.42).

## II.     Relief on the Merits

The FSA, which Congress enacted on December 21, 2018, incentivizes prisoners that the BOP deems to be either minimum or low risk to complete evidence-based recidivism reduction programs in exchange for earned time credits they can utilize to accelerate their release from prison. The statute states that an adult in custody "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" according to the statute's guidelines. 18 U.S.C. § 3632(d)(4)(A). The statute provides that an adult in custody "may not" earn time credits under this provision for any evidence-based recidivism reduction programming that he or she "successfully completed during official detention prior to the date that the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii).

Section 3585(a) states that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). According to that statute, a sentence begins as early as the date that a defendant is taken into BOP custody, even if the defendant has not yet arrived at the facility where he or she ultimately will serve the sentence. In 2023, the BOP promulgated 28 C.F.R. § 523.42, a regulation to implement the FSA time credits provision. Under § 523.42(a),

3 - OPINION AND ORDER

"[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served.)" Thus, the statute and the regulation define "commences" differently.

Petitioner asserts that the BOP should have allowed him to earn and apply FSA time credits from the time he was sentenced and in BOP custody using the definition of "commences" under § 3585(a), rather than only upon arriving at his designated facility (using the definition of "commences" in the regulation). Respondent disagrees, asserting that in issuing § 523.42(a), the BOP acted within its statutory authority to decide when a prisoner is eligible to being earning FSA time credits.

Numerous federal district courts have addressed the tension between the FSA and the BOP's regulations pertaining to when prisoners can begin earning FSA time credits, though to date no circuit court has yet done so. Several of those district courts, including many within the Ninth Circuit, have held that the BOP may lawfully exclude prisoners from earning time credits between their sentencing and arrival at their designated facility. *See, e.g., Cano*, 2025 WL 1808983, at *2–3; *Shemtov v. Birkholz*, Case No. 2:24-cv-10630-SRM-JC, 2025 WL 1490543, at *5 (C.D. Cal. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 1489545 (C.D. Cal. May 22, 2025); *Williamson v. Warden, FPC Alderson*, Case No. 1:24-cv-00348, 2025 WL 2639884, at *7 (S.D.W. Va. July 25, 2025), *report and recommendation adopted*, 2025 WL 2640398 (S.D.W. Va. Sept. 12, 2025); *Dunlap v. Warden FMC Devens*, Case No. 24-cv-11462-RGS, 2024 WL 5285006, at *7 (D. Mass. Dec. 13, 2024), *report and recommendation adopted*, 2025 WL 35248 (D. Mass. Jan. 6, 2025); *Stinson v. Martinez*, Case No. 2:23-cv-0751, 2024 WL 4969169, at *7 (W.D. La. Nov. 12, 2024), *report and recommendation adopted*, 2024 WL

4 - OPINION AND ORDER

4965618 (W.D. La. Dec. 3, 2024); *see also Stevens v. Jacquez*, Case No. 3:23-cv-01482-AA, 2024 WL 3200546, at *4–5 (D. Or. June 25, 2024) (holding that although § 523.52(a) conflicts with the FSA, petitioner was not entitled to habeas relief because he failed to show that he had successfully participated in any programming between his sentencing and arrival at his designated facility that might entitle him to earned time credits). These courts have tended to focus on the interplay between the FSA's provisions regarding earned time credits and its mandate for the creation and use of a risk and needs assessment system "whereby programming is matched to prisoner's needs[.]" *Dunlap*, 2024 WL 5285006, at *7. According to these courts, prisoners may earn FSA time credits only for successfully participating in programming specifically assigned to them following an assessment of their needs.

Several other district courts, again including many within the Ninth Circuit, have rejected the BOP's use of § 523.42(a) to deem a prisoner categorically ineligible to earn FSA time credits during the period between their sentencing and arrival at their designated facility. *See, e.g., Modeste v. Birkholz*, --- F.Supp.3d ---, 2025 WL 3141034 (D. Alaska, Nov. 10, 2025); *Patel v. Barron*, Case No. C23-937-KKE, 2023 WL 6311281, at *5 (W.D. Wash. Sept. 28, 2023); *Huihui v. Derr*, Case No. CV 22-00541 JAO-RT, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023); *Jackson v. Doerer*, Case No. 5:24-01353-ADS, 2024 WL 4719489, at *10 (C.D. Cal. Nov. 7, 2024); *Sharma v. Peters*, 756 F. Supp. 3d 1271, 1282–84 (M.D. Ala. 2024); *Yufenyuy v. Warden*, FCI Berlin, 659 F. Supp. 3d 213, 218 (D.N.H. 2023); *Brenneman v. Salmonson*, Case No. 5:22-cv-7-RWS-JBB, 2025 WL 957216, at *7 (E.D. Tex. Feb. 25, 2025), *report and recommendation adopted*, 2025 WL 914352 (E.D. Tex. Mar. 26, 2025); *Gale v. Warden FCI Milan*, Case No. 24-13127, 2025 WL 223870, at *4 (E.D. Mich. Jan. 16, 2025); *Heath v. Knight*, Case No. CV 22-7270 (RMB), 2024 WL 5198863, at *5 (D.N.J. Dec. 23, 2024); *Kvashuk v. Warden*, FCI Berlin,

5 - OPINION AND ORDER

Case No. 23-cv-007-SE, 2024 WL 4349850, at *3–5 (D.N.H. Sept. 30, 2024); *Pelullo v. FCC Coleman-Low*, Case No. 5:23-cv-189-WFJ-PRL, 2024 WL 3771691, at *3–6 (M.D. Fla. Aug. 13, 2024). These courts have generally viewed § 523.42(a) as creating an "additional exclusion" to prisoner's eligibility to earned time credits that is not authorized by the FSA. *Patel*, 2023 WL 6311281, at *5.

Having considered this split in authority, the Court finds more persuasive the reasoning of the former category of courts. Where, as here, the parties' dispute centers on the BOP's interpretation of the FSA, the Court must review that interpretation under the framework of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Under *Loper*, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" as required by the Administrative Procedure Act ("APA"). In conducting this inquiry, courts use "the traditional tools of statutory construction." *Id.* at 403. When a particular statute "delegates authority to an agency . . . courts must respect the delegation, while ensuring that the agency acts within it." *Id*. "The court fulfills that role by recognizing constitutional delegations, 'fix[ing] the boundaries of [the] delegated authority,' and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Id*. at 395 (quoting Henry P. Monahan, *Marbury and the Administrative State*, 83 Colum. L. Rev. 1, 27 (1983) and *Michigan v. EPA*, 576 U.S. 743, 750 (2015)).

The FSA requires the BOP to create an assessment system that evaluates the risk and needs of each federal prisoner, determines the recidivism risk for each prisoner, and classifies each prisoner as either minimum, low, medium, or high risk of recidivism. 18 U.S.C. §§ 3631, 3632(a). In order to satisfy that requirement, the BOP developed its Prisoner Assessment Tool Targeting Estimated Risks and Needs ("PATTERN") scoring system. This is a process that

necessarily takes place within the prison setting and is not performed by a judge at sentencing. *See* 18 U.S.C. § 3632(a)(1) (the BOP will "determine the risk of recidivism of each prisoner as part of the intake process"). In addition, § 3632(a)(3) requires the BOP to "determine the type and amount of evidence-based recidivism reduction programming["EBRR"] that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs." The BOP must "tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism." 18 U.S.C. § 3632(b)(2).

An eligible prisoner "who successfully completes [EBRR] programming or productive activities ["PAs"] is entitled to earn time credits as follows:

> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in [EBRR] or [PAs].
>
> (ii) A prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in EBRR programming or [PAs].

18 U.S.C. § 3632(d)(4)(A). The FSA does not itself defined what it means to "successfully complete" EBRR programming or PAs or what constitutes "successful participation" in EBRR programming or PAs.

As relevant here, although the FSA does not define what it means to "successfully complete" or "successfully participate" in EBRR programs and PAs as required to earn FSA credits, "it is evident that the statute, read as a whole, contemplates participating in programming that the BOP has individually assigned to each inmate based on that inmate's risk and needs assessment." *Shemtov*, 2025 WL 1490543, at *5. Moreover, the FSA expressly delegates to the Attorney General and the BOP, respectively, the authority to develop and implement that system.

7 - OPINION AND ORDER

18 U.S.C. §§ 3621(h), 3631-33.  As another district judge remarked, "[i]t make no sense to mandate a system for identifying and assigning appropriate EBRR programming (and to link [time credits] to the successful completion of such programming) if participation in other programming (of whatever description) could earn a prisoner [time credits] without regard to whether that programming is appropriate to that prisoner's needs." *Dunlap*, 2024 WL 5285006, at *7.  Given that Congress delegated to the BOP the authority to develop and administer this system, and left undefined what constitutes "successful participation" in programming, the BOP reasonably acted within its authority in awarding FSA time credits to prisoners only for those periods after their initial individual risk and needs assessment, a function that occurs upon the prisoner's arrival at the BOP-designated facility.  *See Sharma*, 756 F. Supp. 3d at 1284 (concluding, under *Loper*, that 28 C.F.R. § 523.41(c)(2) "appears to be a facially valid interpretation of 'successful participation' as used in 18 U.S.C. § 3232(d)(4)(A) since a primary purpose of the FSA in terms of recidivism programming is to reduce recidivism rates by providing inmate access to programming that focuses on reducing an offender's likelihood of reoffending"); *see also Dane v. Bayless*, Case No. 5:24-CV-157, 2024 WL 5150683, at *5 (N.D. W.Va. Nov. 20, 2024) ("[T]he BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for petitioner until he arrived at his designated facility, and as such petitioner could not, in fact, successfully participate in programming" before that assessment).

       Thus, notwithstanding the tension between the FSA reference to the commencement of a term of imprisonment as defined under 18 U.S.C. § 3585(a) and that employed by the BOP regulations in 28 U.S.C. § 523.42, this Court agrees with the sound reasoning of the district courts that have found that such conflict does not automatically entitle a prisoner to award of

8 - OPINION AND ORDER

FSA time credits on the date he or she is received in federal custody. *See, e.g., Dane*, 2024 WL 5150683, at *5 ("[T]he BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for petitioner until he arrived at his designated facility, and as such petitioner could not, in fact, successfully participate in programming" before that assessment). Here, Petitioner makes no showing that he successfully participated in approved EBRR or PA programming from the time he self-surrendered through his arrival at his designated institution; his allegations that he was employed in various capacities during that time period do not establish "successful participation." *See Dane*, 2024 WL 5150683, at *5 ("[A]lthough petitioner asserts that 'he was of good behavior, did not commit any disciplinary infractions, never refused to participate in any programs, and participated in productive activities available to him" before arrival at his designated facility, "the BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for petitioner until he arrived at his designated facility, and as such petitioner could not, in fact, successfully participate in programming" and was "not entitled to FSA time credit for the period prior to arriving at his designated facility") (citation omitted). Accordingly, Petitioner is not entitled to habeas corpus relief.

## CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus and DISMISSES this action.

IT IS SO ORDERED.

DATED:   January 22, 2026

Marco A. Hernández
United States District Judge

9 - OPINION AND ORDER